Donahue, J.
The important question presented by the record in this case is the question of. the authority of Robert Koegle, president of the city commission, to exercise judicial functions.
It is contended upon the part of the plaintiff in error:
1. That a city cannot by charter create a judicial office, such power being conferred upon the legislature by Sections 1 and IS of Article IV of the Constitution of Ohio.
2. That even if a municipality has the power to establish by charter a municipal court, that under the provisions of Section 10 of Article IV of the Constitution it has no power to confer judicial authority upon anyone not elected as a judicial officer.
It is sufficient to say in reference to the first contention that this charter does not purport to establish a court, but, on the contrary, provides that the president of the city commission shall have the judicial functions of a rriayor under the general laws of Ohio, and may use the title of mayor in any case in which the execution of legal instruments of writing, or other necessity arising from the general law of the state, so requires. If, therefore, this officer has any judicial powers whatever, they are conferred upon him by the general laws of the state, and not by any provision of the charter further than that it designates him as the municipal officer who shall to this extent be mayor of the city of Sandusky, until such time as his judicial functions can or may be, by and under authority of the constitution and general laws of the state, *228 performed by some other officer appointed or elected for that purpose.
While it is true that he was not elected mayor' of the city of Sandusky, he was elected as a member of the city commission, with the knowledge on the part of the electors that his election as such commissioner would make him eligible to be selected by the city commission to exercise the judicial functions of mayor under the general laws of the state.
Under the provisions of this charter, the judicial powers of a mayor are not conferred upon one not elected by the people to serve in an official capacity including the exercise of judicial functions, when assigned to the performance of such duties in the manner and method provided by the charter adopted by the qualified electors of the city.
This would seem sufficient compliance with the provisions of Section 10 of Article IV of the Constitution.
The power conferred by this charter upon the city commission to elect one of its members, who, in addition to his other duties, shall exercise the judicial functions of mayor, is similar in some respects to the provisions of Sections 4549 and 4569, General Code, but much more clearly in conformity . to the constitutional provisions relating to judicial officers.
The first of these sections authorizes the mayor, in cities having no police judge, to designate a justice of the peace to perform the duties of the mayor in criminal matters in the absence or during the disability of the mayor. The latter section provides *229 that during the absence, inability, or disability of the police judge, the mayor may select for that purpose a reputable member of the bar, or a justice of the peace residing within the city, who shall have the jurisdiction and powers conferred upon judges of police courts.
In Ex parte Strang, 21 Ohio St., 610, it was held that under the provisions of Section 174 of the municipal code an appointment by the mayor of a member of the bar to hold police court, in the absence or disability of the police judge, regardless of the constitutionality of the statute, is an appointment by one having colorable authority, and that the person so appointed is an officer de facto, and as such his authority cannot be collaterally attacked. The question of the constitutionality of the act authorizing such appointment, however, was not decided.
This proceeding in error is prosecuted to reverse the judgment in a cause pending before an officer whose authority to exercise judicial function was challenged before trial and rendition of judgment. Whether the question can be raised in this way or only in an action in quo warranto it is not now necessary to decide.
Under the constitution of this state a lieutenant governor is elected to discharge certain specific duties attached to that office, yet in case of the death, impeachment, resignation, removal, or other disability of the governor, the powers and duties of that office devolve upon the lieutenant governor; and if the lieutenant governor, while executing the office of governor, shall be impeached, displaced, *230 resign or die, or otherwise become incapable of performing the duties of the office, the president of the senate shall act as governor; and if the president of the senate shall be rendered incapable of performing the duties of governor, the same shall devolve upon the speaker of the house of representatives.
Neither of these officers is elected governor of Ohio, although the constitution requires that the governor shall be elected. All of these officers, who succeed in the order named to the office of governor, are elected officers, some of them, however, only being elected in the county or district of their residence, and yet they may in turn succeed to the office of governor.
It is true that this is by reason of specific constitutional provisions, yet, nevertheless, the principle obtains that an elected officer, on the happening of a certain contingency, may exercise additional functions, other than those pertaining to the specific office to which he was elected.
If the office of mayor is retained by the charter to the extent of the judicial functions exercised by mayors of other cities, Under the general laws of the state, then this method of selection is not unconstitutional.
It is claimed, however, that the office of mayor is abolished by the charter. It is true that Section 78 of the charter provides that when the term of any existing officer shall expire, the office shall be deemed abolished, but it further provides that the powers conferred and the duties imposed upon such officer shall thereafter be exercised and discharged *231 by the commission, officer, board, or department upon whom are- imposed corresponding functions, powers and duties by this charter or by any ordinance or resolution of the city enacted after the adoption of the charter. But even if Section 78 sustains the claim of counsel for plaintiff in error, this entire charter must be construed as a whole.
Construing Section 78 in connection with Section 7 it is apparent that this charter retains the office and title of mayor with all the judicial powers of mayors of other cities undér the general laws of Ohio.
It was held by this court in the case of Flotron v. Barringer, 94 Ohio St., 185, that the character of an officer is determined more by the powers and duties of the office than by the name given to the officer; that the city commission provided for in the charter of the city of Dayton, in so far as its legislative authority is concerned, corresponds to the council of other cities, and is, to all intents and purposes, the council of that city, notwithstanding that that commission is vested with further governing powers not possessed by councils of other municipalities and not legislative in character.
There is a clear analogy between the principle announced in that case and the case afe bar. In this case, excepting administrative functions, the president of the city commission is authorized to exercise the authority conferred by the general laws of the state upon mayors in municipalities having no charter. The charter designates him as president of the city commission, but it also authorizes him to use the title of a mayor in any case in which the *232 execution of legal instruments of writing, or other necessity arising from the general law of the state, so requires.
In so far as he exercises judicial functions, he is the mayor of the city of Sandusky, with authority to use that title.

Judgment affirmed.

Nichols, C. J., Wanamaker, Newman, Jones, Matthias and Johnson, JJ., concur.